**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------
                                                    :
K-Tronik N.A., Inc.,                                :
                                                    :
      Plaintiff,                             :        Civ. No. 06-0729 (DRD)
                                                    :
          v.                               :
                                                    :        **O P I N I O N**
                                                    :
Vossloh-Schwabe Matsushita and                      :
Vossloh-Schwabe, Inc.,                              :
                                                    :
      Defendants                             :
                                                    :
-------------------------------------------------------

Mitchell B. Seidman, Esq.
Eileen Sattiraju, Esq.
SEIDMAN & ASSOCIATES, LLC
777 Terrace Avenue, Fifth Floor
Hasbrouk Heights, New Jersey 07604

*Attorneys for Plaintiff*


Robert J. McGuire, Esq.
PODVEY, MEANER, CATENACCI, HILDNER, COCOZIELLO & CHATTMAN, PC
One Riverfront Plaza
Newark, New Jersey 07102

Robert M. Linn, Esq.
John M. Pierce, Esq.
11 Stanwix Street, 15th Floor
Pittsburgh, Pennsylvania 15222


*Attorneys for Defendant*s

**DEBEVOISE, Senior District Judge**

Plaintiff, K-Tronik N.A., Inc. ("K-Tronik"), a corporation engaged in the business of manufacturing, distributing and selling ballasts,[1] filed a complaint on December 27, 2005 against Defendants, Vossloh-Schwabe Matsushita and Vossloh-Schwabbe, Inc., corporations engaged in the business of manufacturing, distributing and selling components for lighting products, alleging claims that arose from the parties' attempt to develop a business relationship and engage in a series of transactions. Plaintiff's eight-count complaint lists the following claims: Count 1 - conversion and pirating of confidential, proprietary information; Count 2 - unfair competition; Count 3 - unjust enrichment; Count 4 - fraud; Count 5 - negligent misrepresentation; Count 6 - breach of contract; Count 7 - breach of the implied covenant of good faith and fair dealing; Count 8 - promissory estoppel.

Presently before the court are Defendants' motion to dismiss Counts 1, 4, 6, 7, and 8, and, as an alternative to granting that motion with respect to Count 4, Defendants' motion for a more definite statement of that Count. For the reasons set forth below, Defendants's motion to dismiss with respect to Counts 6, 7, and 8 will be granted. Defendants' motion to dismiss with respect to Count 4 will be denied. Defendants' motion to dismiss with respect to Count 1 will be denied in part and granted in part. Defendants' motion for a more definite statement as to Count 4 will be denied.

## I.  BACKGROUND

**Plaintiff's allegations**

Plaintiff's complaint makes the following allegations:

---

[1] Ballasts are components used in lighting products such as fluorescent lights.

In May of 2001 Defendants approached Plaintiff to discuss the possibility of entering a business relationship in which Plaintiff would manufacture private label ballasts for Defendants to sell along with the other lighting components that Defendants already offered to their customers.  Through the remainder of 2001 and early 2002 the parties discussed the potential relationship and in April of 2002, Defendants prepared and submitted a proposal outlining the terms and conditions of a possible agreement.

In May of 2002 Plaintiff made a presentation to Defendants regarding the products it could manufacture for them.  The presentation included confidential and proprietary information including product specifications and technical information.  Plaintiff also provided Defendants with samples of its ballasts and detailed literature that included confidential and proprietary information.  Shortly thereafter, Defendants advised Plaintiff that they could not continue negotiating the prospective relationship due to internal issues such as corporate reorganization.

By January of 2003 Defendants had resolved their internal issues and sought to revive their discussions with Plaintiff.  Defendants advised Plaintiff that they sought to enter the ballast market in the United States but needed Plaintiff to act as their partner because they lacked the necessary resources.

On January 10, 2003 Plaintiff sent Defendant pricing and other information, including confidential information, regarding the ballasts in question.  Defendants contacted Plaintiff on March 3, 2003 with an email in which Defendants reasserted their interest in continuing the negotiations and requested a product portfolio for certain ballasts.  Plaintiff provided the requested information.

On April 28, 2003 Defendants sent another email requesting further information and

3

product samples, and suggesting that the parties meet in May of 2003.  Plaintiff sent the requested items.  Meetings took place on May 8th and 9th.  Plaintiff sent further information and samples based on requests that Defendants made at those meetings.  On May 26th Defendants sent an email listing yearly sales estimates for several of the ballasts to be produced.  The email requested price quotes for each product based on the projected number of units to be purchased.

In June of 2003, Plaintiff provided further information and product samples.  On July 9th Defendants sent Plaintiff an email which read, "After technical and commercial decision in our house [sic] (hopefully in July), I will come again to clarify the complete process and sign a contract with you."  (Pl.'s Compl. at ¶ 24).  On August 7, 2003 Defendants requested a product insurance statement providing information as to the maximum amount to which Plaintiff was insured.  Plaintiff provided that statement on the same day.

On September 4, 2003 Defendants emailed Plaintiff to advise it that they would be developing ballasts on their own and would not need Plaintiff's assistance in manufacturing any ballasts.  Defendants stated that they would start their marketing penetration in the United States by the end of 2003.

Plaintiff responded by requesting that Defendants return all confidential and proprietary information, including the product samples it provided.  Defendants agreed not to utilize any such confidential and proprietary information, to return the product samples, and to delete all emails and documents concerning discussions between the parties.

In a letter dated September 15, 2003 Plaintiff advised Defendants that its conduct was improper.  Defendants agreed to meet with Plaintiff to restore negotiations and sign a written contract.  The parties met in November of 2003 and January of 2004 but no contract was ever

signed and communication between the parties ended.  In 2005, in preparation for the New York

Light Fair trade show, Defendants released promotions showing that they had created ballasts for

the U.S. market.  From those promotions, and from Defendants' exhibit at the trade show,

Plaintiff concluded that Defendants had utilized Plaintiff's confidential and proprietary

information to develop their new products.

## II.  DISCUSSION

### Standard for Dismissal under FED. R. CIV. P. 12(b)(6) and (c)

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no

relief could be granted under any set of facts that could be proved consistent with the

allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73.  Allegations contained in the

Complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and Plaintiff shall be

"given the benefit of every favorable inference that can be drawn from those allegations."

Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  However, the plaintiff is required to

make factual allegations and cannot rely on conclusory recitations of law.  Pennsylvania ex rel.

Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

### Count 1 - conversion and pirating of confidential, proprietary information

"In order to succeed on a claim for conversion, a plaintiff must establish that he was

'deprived of his property by the act of another assuming an unauthorized dominion and control

over it.'"  Erit v. Judge, Inc., 961 F. Supp. 774, 781 (D.N.J. 1997).  Moreover, "[t]he tort[] of

conversion . . . relate[s] to interference with tangible rather than intangible property . . . ."  Video

Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 568 (D.N.J. 2002).

In the present case, Plaintiff alleges that the following items were supplied to Defendants:

A.      K-Tronik Customer List to identify customers that both companies sell to and avoid conflicts; supplied U.S. OEM Ballast Purchase Volumes.

B.      K-Tronik Market Information on Customer's [sic] Ballast Purchases and K-Tronik, Ballast, Sales Prices.

C.      K-Tronik Ballast Specification and Performance Information.

D.      Potted, K-Tronik, Ballast Samples for Testing . . . .

E.      Un-Potted, K-Tronik Ballast Samples, where the internal design and Components are exposed, for testing purposes only . . . .

F.      K-Tronik Ballast Warranty Procedures and Customer Service Procedures.

G.      K-Tronik input on the Initial Order of ballast stock Defendants should purchase from K-Tronik.  Year One, Year Two, and Three (3 Year Proposed Contract).

(Pl.'s Compl. at ¶ 32).

        Of the above items, only items D and E can be considered tangible property.  Items A, B, C, F, and G, are not tangible property and thus cannot be the subject of a conversion claim.  Additionally, Plaintiff's alleged provision of those items to Defendants would not have prevented Plaintiff from using them.  Therefore, Plaintiff's claim for conversion of items A, B, C, F, and G must be dismissed.

        Plaintiff's complaint states that item E has been returned.  Thus, the only tangible item provided to Defendants over which Defendants still exercise control is item D.  As Plaintiff alleges that item D was provided to Defendants only for them to use in evaluating the viability of a potential business relationship, and that the evaluation of any such relationship has been completed, and that Defendants have retained possession of item D despite Plaintiff's request that it be returned, Plaintiff has sufficiently pled a claim for conversion with respect to item D,

the potted ballast samples.  Therefore, Defendants' motion to dismiss Count 1 will be denied as to the potted ballast samples but will be granted as to all other items Plaintiff allegedly supplied to Defendants.

**Count 4 - fraud**

Count 4 alleges a claim of common law fraud.  "The five elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (N.J. 1997).  FED. R. CIV. P. 9(b) states that claims of fraud must be pled with particularity.  "In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the circumstances of the alleged fraud . . .' by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004).

Defendants argue that Plaintiff failed to plead this count with particularity, stating that "Plaintiff fails to identify and describe which of the purported communications and/or statements made by Defendants constituted the alleged misrepresentations and what alleged communications were allegedly false."  (Def.s' Br. at 20).  But Plaintiff not only identifies the allegedly false communications, it quotes those communications, cites the day they were made, who made them, and how it relied on them.

For example, Plaintiff quotes an email allegedly sent on March 3, 2003 by Richard Koegel, Marketing Director for Defendant Vossloh Schwabe Matsushita, stating the following: "[s]ince we do not intend to develop this products [sic] ourselves, we are looking for a potential

7

partner and of course one option would be to pick up our project at the stage we left it last year . . . ." (Pl.'s Compl. at ¶ 16).  Plaintiff quotes another email, dated April 28, 2003, in which Mr. Koegel allegedly asks Plaintiff to send him samples of each product, along with technical information, for inspection and approval by Defendants' labs.  Plaintiff then states the following: "In reliance on Defendants' . . . communications . . . [Plaintiff] sent the samples and information requested by the Defendants and went forward with entering into a business relationship with the Defendants."  (Pl.'s Compl. at ¶ 19).

Finally, Plaintiff asserts that after it "had provided all of the specifications, technical information, samples, pricing and customer information, and other confidential and proprietary information necessary to produce and market the Ballasts, Defendants advised that they would not be entering into a relationship with [Plaintiff]" and would instead begin manufacturing ballasts and enter the US market on their own.  (Pl.'s Compl. at ¶ 28).  In an email dated September 9, 2003 Defendants' representative informed Plaintiff that Defendants would "start [their] marketing penetration end of this year in USA with new American ballasts [sic]."  (Pl.'s Compl. at ¶ 30).

Plaintiff alleges that in order to enter the U.S. market in such a short period of time, "Defendants must have been working on producing Ballasts on their own or through another source at the same time they were misrepresenting to [Plaintiff] that they had/were entering into a contract/relationship with [Plaintiff].  Plaintiff further asserts that the alleged misrepresentations, quoted in the above emails, harmed Plaintiff because they induced Plaintiff into providing Defendants with all the information they needed to begin competing in the US ballast market.

In quoting various communications between the parties and noting the alleged dates and

circumstances of each communication, Plaintiff has pled each element of its fraud claim with sufficient particularity.  For the above reasons, Defendants' motion to dismiss Count 4 will be denied.

Defendants argue that if Plaintiff's fraud claim is not dismissed, Plaintiff should be required to submit a more definite statement of that claim.  FED. R. CIV. P. 12(e) allows a party to file a motion for a more definite statement "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . . ."  As discussed above, Plaintiff's allegations include many specifics, including quotes of the alleged misrepresentations, the date on which they were made and by whom, and an explanation of how the alleged misrepresentations harmed the plaintiff.  Such allegations are not so vague that Defendants cannot frame a responsive pleading.  As such, Defendants' motion for a more definite statement will be denied.

## Count 6 - breach of contract

Defendants argue that Plaintiff's claim for breach of contract must fail because the alleged contract fails to satisfy the statute of frauds.  That statute states the following:

> (1) . . . a contract for the sale of goods for the price of $ 500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker . . . .

> (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

N.J.S.A. § 12A:2-201.

Plaintiff contends that the alleged contract satisfies the statute of frauds despite the absence of a formal written contract.  Specifically, Plaintiff argues that the series of communications between the parties is sufficient to meet the statute of frauds requirement. Plaintiff points to four writings:

•    Defendants' April 2002 proposal;

•    Mr. Koegel's March 3, 2003 email;

•    Mr. Koegel's March 28, 2003 email; and

•    Nicolas Stehle's May 26, 2003 email.

But those writings fail to show that there was ever any meeting of the minds.

As discussed in the complaint, the April 2002 communication is merely a proposal that served as a starting point from which the parties began a series of negotiations.  Those negotiations ceased one month later because Defendants were coping with an internal corporate reorganization.  Defendants' March 3, 2003 email was simply an invitation to resume negotiations.  Defendants' March 28, 2003 email asks Plaintiff to send information and samples but gives no indication that the parties have come to an agreement.  Rather, the email references the "proposed products" and states Defendants' need to conduct an internal review of the product samples and technical information.  Defendants' May 26, 2003 email is a request for a price quote.  Upon sending that email Defendant' were still unaware of the price they would be charged for each product under the proposed agreement.  Furthermore, the email states that Defendants will contact Plaintiff "to arrange the final points (contracts, label, etc . . .)" only after Defendants have received "technical validation from [their] lab and commercial validation from"

another department.  (Pl.'s Compl. at ¶ 22).  Such communications cannot satisfy the statute of frauds.  If anything, those writings show that there was never any meeting of the minds as the parties had not yet agreed on the price terms, nor had Defendants finished examining the product to their satisfaction.

Plaintiff further argues that its September 15, 2003 letter to Defendants satisfies the requirements of N.J.S.A. § 12A:2-201(2) as it is a letter between merchants that memorializes a prior oral agreement and to which Defendants offered no objection.  But Plaintiff's own allegations contradict the contention that the parties had an oral agreement prior to the September 15, 2003 email.  Paragraph 28 of the Complaint describes an email dated September 4, 2003 in which Defendants' representative informed Plaintiff that they were no longer interested in entering a relationship with Plaintiff.  Paragraph 30 of the Complaint describes an email dated September 9, 2003 in which the same representative reiterates Defendants' intention to cease negotiations with the Plaintiff.  Those emails inform Plaintiff that Defendants will be developing ballasts on their own and that they will not need Plaintiff's help in that regard.

Based on those alleged communications, Plaintiff's contention that there was a prior oral agreement is inconsistent with other allegations in the Complaint.  As such, Defendants' motion to dismiss Count 6 will be granted.

**Count 7 - breach of the implied covenant of good faith and fair dealing**

"In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."  Noye v. Hoffmann-La Roche, 238 N.J. Super. 430, 434 (App. Div. 1990).  As discussed above, Plaintiff's allegations fail to support a claim for breach of contract.  Therefore, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must also be

dismissed.  Defendants' motion to dismiss Count 7 will be granted.

**Count 8 - promissory estoppel**

"There are four elements to the doctrine of promissory estoppel: 1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment."  Blizzard v. Exel Logistics N. Am., Inc., No. 02-4722, 2005 U.S. Dist. LEXIS 28160, at *43-44 (D.N.J. Nov. 15, 2005) (internal quotations omitted).

With regard to the first element, Plaintiff argues that four writings (the same four writings upon which Plaintiff bases its breach of contract claim) contain a clear and definite promise.  But as discussed above, the first two writings merely initiate negotiations; the third writing asks Plaintiff to send information and samples but gives no indication that the parties have come to an agreement; and the fourth writing makes a request for a price quote and suggests that contract negotiations may follow once certain contingencies are met.

None of the alleged writings make a clear and definite promise.  Thus, Plaintiff cannot satisfy the first element in its promissory estoppel claim.  Defendants' motion to dismiss Count 8 will be granted.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss with respect to Counts 6, 7, and 8 will be granted.  Defendants' motion to dismiss with respect to Count 4 will be denied. Defendants' motion to dismiss with respect to Count 1 will be denied as to the potted ballast samples but will be granted as to all other items Plaintiff allegedly supplied to Defendants. Defendants' motion for a more definite statement as to Count 4 will also be denied.  The Court

will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:        May 8, 2006

13